IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TYRONE HENRY REED,

        Plaintiff,

v.                                              CIVIL ACTION NO.   3:16-3872

DARDEN RESTAURANTS, INC.,
d/b/a OLIVE GARDEN,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Darden Restaurants, Inc., d/b/a Olive Garden's Motion to Compel Arbitration and to Dismiss or, in the Alternative, to Stay this Proceeding Pending Arbitration.[1]  (ECF No. 2).  For the following reasons, the Court **GRANTS** the Motion to Compel Arbitration and **DISMISSES** this case **without prejudice** pending arbitration.

**I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

This action was brought by Plaintiff Tyrone Reed under diversity jurisdiction.  *See* 28 U.S.C. § 1332 (providing, in part, that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States").  Plaintiff filled out and electronically signed an employment application for Olive Garden as a line cook on November 25, 2013.  *See Employment Application*, ECF No. 2-6, at 11.  Plaintiff was hired by Defendant in December and

---

[1] Defendant's Motion also addresses that Plaintiff misidentified the defendant as Darden Restaurants when GMRI actually employed Plaintiff and is the proper corporate defendant.  *Def.'s Mem. of Law in Support of Def.'s Mot.*, ECF No. 3.

worked through August of 2014 before voluntarily terminating his position. *See Def.'s Mem. of Law in Support*, ECF No. 3, at 3-4. In his Complaint, Plaintiff alleges that Defendant "intentionally exposed Plaintiff to [an] unsafe working condition" and that Defendant wrongfully terminated Plaintiff for his race and as retaliation for filing a workman's compensation claim in violation of the West Virginia Human Rights Act (WVHRA). *Pl.'s Compl.*, ECF No. 1-2, at ¶¶ 14, 18-19. As a result of Defendant's actions, Plaintiff seeks compensatory damages for lost income and pain and suffering, punitive damages for intentional injury, damages caused by an intentional infliction of emotional distress, and other remedies afforded under the WVHRA. *Id.*at ¶¶ 1-10 following "wherefore" clause.

## II. DISCUSSION

Defendant now moves the Court to compel arbitration pursuant to Plaintiff's agreement to a Dispute Resolution Process (DRP) found in a booklet provided to all employees at orientation and referenced to in the employment application and employee handbook. *See Def.'s Mem. of Law in Support*, ECF No. 3, at 3-5. The DRP provides a four-step resolution process in which the final step is binding arbitration. *See Dispute Resolution Process*, ECF No. 2-2, at 8. The arbitration section specifies that "[a]rbitration shall be the only remedy for resolving any dispute related to the interpretation or application of the DRP or its rules …." *Id.* The DRP also incorporates the Employment Dispute Resolution Rules of the American Arbitration Association (AAA). *Id.* The AAA, in turn, specifies that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Employment Arbitration Rules & Mediation Procedures*, ECF No. 2-5, at 2. Moreover, the employee handbook explains how employees should address workplace issues, referencing the DRP directly. *See Olive Garden Team Member Handbook*, ECF No. 2-1,

at 2.  The handbook also alerts employees of a DRP poster hanging in the restaurant and provides ways to obtain additional copies of the DRP.  *See id*.

Plaintiff argues that the arbitration requirement should not be enforced because Plaintiff did not sign any of the documents and, even if he had, the arbitration agreement is unconscionable. *Pl.'s Resp. to Def.'s Motion*, ECF No. 8, at 2.  Regarding unconscionability, Plaintiff points to a variety of concerns, including: a boilerplate, "take it or leave it" contract for employment; unequal bargaining power between the parties; denial of the constitutional right to a jury; denial of attorney's fees provided for in WVHRA; lack of mutuality of obligation; and a host of other factors regarding substantive unconscionability.  *Id.* at 8-12.  Plaintiff also suggests that the instant dispute falls outside the DRP's enforcement.  *Id.* at 4.

### a. Contract formation

The threshold issue for this Court to decide is whether an arbitration agreement exists between Plaintiff and Defendant.  In *Granite Rock v. International Brotherhood of Teamsters*, the Supreme Court specified that a challenge to whether an arbitration agreement was validly formed is a determination for the district court, not an arbitrator.  561 U.S. 287, 296 (2010).  To compel arbitration, a party must demonstrate to the court that both the parties agreed to arbitrate the dispute.  *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) (explaining that a "plaintiff must allege (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction … to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute").

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally … should apply ordinary state law principles that govern the

formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997) ("Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."). This Court thus looks to West Virginia's law on contract formation. West Virginia law requires an offer, acceptance, and consideration for a contract to be formed between parties. *See Cook v. Hecks, Inc.*, 342 S.E.2d 453, 458 (W. Va. 1986).

Plaintiff makes two arguments that challenge the existence of a valid contract under state law: the first focusing on the alleged lack of signature; and the second focusing on the lack of mutuality. *See Pl.'s Resp.*, ECF No. 8, at 2, 12. The Court does not find either of these arguments persuasive based on the record.

First, Plaintiff continuously points to the fact that Defendant cannot produce a DRP document with Plaintiff's signature. *See id.* at 2, 3, 4, 9, 11. However, other evidence within the attached documents to Defendant's Motion demonstrates that Plaintiff either signed the DRP or at least acknowledged its enforcement. In the Case Detail Report, the personnel file indicates that Plaintiff's signature for both the DRP and employee handbook had been verified. *Case Detail Report*, ECF No. 2-8, at 4. Plaintiff also hit "accept" to a statement explaining that Darden uses a DRP in his employment application. *Employment Application*, ECF No. 2-6, at 6 ("I further acknowledge and agree that if I am offered and accept employment, any dispute between me and any of the Darden Companies relating in my employment and/or my separation from employment … shall be resolved pursuant to the terms and conditions of the DRP."); *see also Decl. of Melissa Ingalsbe*, ECF No. 2-4, at ¶ 3. This document is electronically signed by Plaintiff. *Id.* at 7. A signature on an application that includes an arbitration clause has been upheld as an enforceable agreement. *See Circuit City Stores v. Adams*, 532 U.S. 105, 109 (2001); *Johnson v. Circuit City*

*Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (finding a signed employment agreement containing an arbitration clause enforceable against employee); *see also Evans v. Bayles*, 787 S.E.2d 540, 544 (W. Va. 2016) (explaining that "an unsigned document [can] be incorporated into a signed document as long as the signed paper specifically refers to the unsigned document and the unsigned document is available to the parties" (internal quotation marks and citation omitted)).

Plaintiff even recognizes that Defendant "has all employees sign in every State of operation" the DRP and other documents upon hiring, so it appears unlikely that Plaintiff would have been hired by Defendant without having signed the same documentation. *Pl.'s Resp.*, ECF No. 8, at 1. The Director of Dispute Resolution and HR Compliance for Defendant, Melissa Ingalsbe, also declared that "there is no indication, and I have no knowledge that [Plaintiff] ever objected to any provisions of the DRP." *Decl. of Melissa Ingalsbe*, ECF No. 2-4, at ¶ 13. Notably, Plaintiff does not deny that he signed any of the documents referencing the DRP or that he received the DRP booklet. Instead Plaintiff focuses only on the fact that Defendant cannot produce a signed copy of the DRP or employee handbook. Although Defendant cannot produce the signed copy of the DRP, the Court concludes that Plaintiff did in fact sign documentation incorporating the DRP and thus accepted its enforcement.

Even if there was no other evidence that Plaintiff signed and accepted the DRP, however, West Virginia recognizes unilateral contracts in which "one party makes a promissory offer and the other accepts by performing an act rather than by making a return promise." *Schultz v. AT & T Wireless Servs., Inc.*, 376 F. Supp. 2d 685, 691 (N.D.W. Va. 2005) (finding an unsigned agreement enforceable when plaintiff continued service with defendant after receiving terms and conditions); *see also Citynet, LLC v. Toney*, 772 S.E.2d 36, 41 (W. Va. 2015). Defendant's provision of the DRP constitutes an offer to be accepted by an employee. Defendant hired

Plaintiff in December of 2013, and Plaintiff walked off his shift in August 2014, terminating his employment. *See Def.'s Mem. of Law in Support*, ECF No. 3, at 3-4. During his eight months of employment, Plaintiff must have been aware of the DRP as it was included within the employee handbook, a separate document, and a poster hanging in the restaurant. By continuing to work for Defendant, Plaintiff implicitly agreed to the terms of the DRP with his continued employment. *See, e.g.*, *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (finding, under North Carolina law, that employee working for three months after learning about DRP assented to its use). The Court, therefore, finds that the DRP was a valid offer to which Plaintiff accepted through signature and employment.

Plaintiff's second argument involving contract formation references the lack of additional consideration provided to Plaintiff. *Pl.'s Resp.*, ECF No. 8, at 6. Consideration is "defined as some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another." *Dan Ryan Builders, Inc. v. Ryan*, 737 S.E.2d 550, 556 (W. Va. 2012) (internal quotations and citation omitted). However, the only consideration required to enforce an arbitration agreement is that both parties are bound by the resolution format. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) ("no consideration [is required] above and beyond the agreement to be bound by the arbitration process" (internal quotation marks and citation omitted)). The fact that Defendant has bound itself to the same DRP process as Plaintiff, "is *a fortiori* adequate consideration for this agreement." *Id.*; *see also O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement."). Thus, the Court finds that because Defendant and Plaintiff are both bound to the DRP, consideration supports the formation

of the contract. As there is evidence of an offer, acceptance, and consideration, the Court finds that there is an arbitration agreement between Plaintiff and Defendant through the DRP.

### b. Arbitration of gateway issues

The second issue for this Court to determine is whether the Court or the arbitrator should decide whether the arbitration agreement is unconscionable. The arbitration clause within the DRP is governed by the Federal Arbitration Act (FAA), which states that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (explaining that "involving commerce" as stated in the FAA is equivalent to "affecting commerce" and is meant to extend to "the full reach of the Commerce Clause" (internal quotation marks and citations omitted)). The FAA "create[d] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, through the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to solve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). However, arbitration agreements can still be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

The Court finds this case to be similar to *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). In that case, the parties entered into an arbitration agreement that Rent-A-Center sought to enforce after Antonio Jackson filed an employment discrimination claim in federal court.

*Id.* at 65.  Jackson argued that the arbitration agreement was unconscionable, but Rent-A-Center asserted that a provision within the agreement gave the arbitrator exclusive authority to resolve any issue regarding the enforceability of the agreement.  *Id.* at 66.

In deciding whether it was for the court or the arbitrator to decide the unconscionability issue, the Supreme Court first looked at the "delegation provision" which provided that: "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."  *Id.* (internal quotation marks and citation omitted).  The Supreme Court recognized that parties can enter into such delegation provisions, in which they "agree to arbitrate 'gateway' questions of 'arbitrability[.]'"  *Id.* (citations omitted).  Such "gateway" provisions are enforceable under § 2 of the FAA "save upon such grounds as exist at law or in equity for the revocation of any contract[.]'"  *Id.* (quoting, in part, 9 U.S.C. § 2).  Thus, the question for the Supreme Court was whether the delegation provision at issue was valid under § 2.  *Id.*

In attacking the arbitration agreement, Jackson challenged the validity of the contract as a whole and did not make any specific challenge to the delegation provision itself.  *Id.* at 72.  Rather, he made unconscionability arguments that applied to either just the general agreement to arbitrate or to both the agreement to arbitrate and the delegation provision.  *Id.* at 73-74.  In other words, Jackson's argument was "that the Agreement *as a whole* is unconscionable under state law."  *Id.* at 75 (italics in original).[2]  As Jackson did not make any arguments that the delegation provision by itself was unconscionable, the Supreme Court determined the clause was enforceable, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  *Id.* at 72.

---

[2] Jackson raised one challenge to the delegation provision when the case was before the Supreme Court, but the Court found he raised the issue too late to be considered.  *Id.* at 75-76.

Similarly, in this case, the arbitration agreement contains a delegation provision. The DRP specifies that "[a]rbitration shall be the only remedy for resolving *any dispute related to the interpretation or application of the DRP* or its rules." *Dispute Resolution Process*, ECF 2-2, at 8 (emphasis added). The referral to the AAA rules asserts this delegation as well: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence, scope or validity* of the arbitration agreement." *Employment Arbitration Rules & Mediation Procedures*, ECF No. 2-5, at 2 (emphasis added). As in *Rent-A-Center*, Plaintiff does not make any specific arguments in his Response that the delegation provision itself is unenforceable. Instead, Plaintiff's arguments focus on the unconscionability of the entire agreement. *See Pl.'s Resp.*, ECF No. 8. As the DRP contains a gateway provision clearly and unmistakably delegating resolution of the application and validity of the agreement with the arbitrator, the Court finds no reason why this provision should not be enforced. *See Peabody Holding Co. v. UMWA*, 665 F.3d 96, 102 (4th Cir. 2012) (stating an "agreement must clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate" (internal ellipsis, quotation marks, and citations omitted)). Thus, it is for the arbitrator, not the Court, to determine whether the arbitration agreement is unconscionable. Plaintiff's other arguments challenging the application and enforcement of the arbitration agreement likewise are to be decided by an arbitrator.

### c. Mandate to stay

Defendant's Motion asks the Court to dismiss or alternatively stay this proceeding pending arbitration. ECF No. 2. The FAA mandates district courts to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Although the §3 mandate requires a stay, federal circuit courts are divided as to whether a district

court retains the discretion to dismiss an action when all claims are referred to arbitration. *Compare Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015) (mandating stay); *Cont'l Cas. Co. v. Am. Nat'l Ins.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) (same); *Lloyd v. HOVENSA, LLC*, 369 F.3d 263 (3d Cir. 2004) (same); *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir. 1994) (same); *and Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir. 1992) (same) *with Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141 (1st Cir. 1998) (recognizing discretion to dismiss); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) (same); *and Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th Cir. 1988) (same). Here in the Fourth Circuit, the Court has differentiated procedural outcomes based on whether all claims within a case are sent to arbitration. *Compare Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (mandating a stay) *with Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). In *Aggarao v. MOL Ship Management Company*, the Court recognized the tension between these two decisions but deferred resolving the issue. 675 F.3d 355, 376 n. 18 (4th Cir. 2012).

In this case, Plaintiff brings a deliberate intent claim and a claim under the WVHRA. *See Pl.'s Compl.*, ECF 1-2, at ¶¶ 14, 18-19. Both of these causes of action fall under the DRP's application and will be sent to arbitration. Any arguments on the validity of the arbitration agreement in terms of unconscionability will also be for the arbitrator to decide. Therefore, this Court determines that all issues presented by Plaintiff are left for arbitration. Following the guidance of this circuit in *Choice Hotels*, dismissal pending arbitration is appropriate when all issues are subjected to arbitration.

### III. CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration (ECF No. 2) and **DISMISSES** this case **without prejudice** pending arbitration.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 3, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE